## No. 11,178.

### THE STATE OF LOUISIANA VS. JOHN DONELON ET ALS.

1. It is not sufficient ground to quash an indictment that the indicted persons appeared before the grand jury and were interrogated as witnesses, they having been at the time incarcerated in jail, under capiases from the Recorder's Court, the proof disclosing that, at the time each was examined, he was informed that he had the right to decline to make answers to such questions as might tend to incriminate himself, or render him liable to a criminal prosecution.

State vs. Donelon et als.

2   Once a juror has been interrogated and cross-interrogated on his *voir dire* as to his qualifications as a juror, and the trial judge has decided that he is competent, this is the end of the matter, in so far as the trial court is concerned; and it is not admissible, except under extraordinary circumstances, for the defendant's counsel to reopen the question and investigate the question anew.

3.   It is a settled rule of law, that when two or more persons are jointly indicted for the commission of one and the same offence, the confession of one, made in the absence of the others, implicating himself and others, may be properly admitted in evidence, but it is to be received as evidence against the party making it, and the jury should be so instructed.

4.   Unless the whole of a confession is received in evidence and considered, the true meaning and import of the part which is good evidence against him can not be ascertained.
       It is admissible for the prosecution to contradict any part of the prisoner's statement that is given in evidence, and then the whole testimony is left to the jury for their consideration, precisely as in other cases where one part of the testimony is contradictory to another.
       If the confession implicates other persons by name, yet it must be proved as it was made, not omitting names; but the judge's duty is to instruct the jury that is not evidence against any but the person who made it.

5.   *Res gestæ* consist of circumstances or declarations made admissible as original evidence by reason of their connection with the particular fact under investigation; and the test is whether the fact or circumstance put in evidence is so connected with the main facts under consideration as to elicit its character, to further its object, or to form, in conjunction with it, one continuous transaction.

6.   The general rule in reference to the introduction of evidence for the purpose of rebutting other evidence in respect to character seems to be that it must be confined to general reputation, and not permitted to descend to proof of particulars and specific facts.

7.   It is not competent to contradict a witness as to *collateral* facts; and the test as to whether or not it be a matter as to which he could be contradicted, is whether or not the same evidence could be heard in support of their defence.

APPEAL from the Criminal District Court for the Parish of Orleans. *Ferguson, J.*

*M. J. Cunningham*, Attorney General, and *Lionel Adams*, Assistant District Attorney, for the State, Appellee.

*A. D. Henriques* for Defendants and Appellants.

*Louis A. Paquet,* on same side.

The opinion of the court was delivered by

WATKINS, J.   The accused, John Donelon, was jointly indicted and tried with several others on a charge of murder, and the result

of the trial was that he and two others were convicted and found guilty without capital punishment, the prosecution as to the other three defendants having been abandoned after the case had been closed and submitted to the jury.

This appeal is prosecuted from the judgment and sentence of the court by John Donelon alone, assigning as the principal ground on which he is entitled to relief various errors committed by the trial judge in admitting illegal evidence over his objections and exceptions, and excluding legal and competent testimony that he was entitled to have introduced and considered by the jury of trial, though other grounds are assigned and discussed in attorneys' printed briefs.

I.

Preliminarily, the defendants collectively moved the court to quash the indictment on the ground that the grand jury required and compelled them to appear and be examined as witnesses touching the charge preferred in the indictment that was afterward preferred against them, they being at the time incarcerated in jail under an accusation pending against them for the *same* offence in one of the recorder's courts, without benefit of bail. On the trial of this motion to quash testimony was adduced, the motion overruled and the defendants reserved a bill of exceptions.

An examination of the testimony shows that the defendants were produced before the grand jury as witnesses in the matter of the investigation of the homicide of Thomas Fitzgerald, for the commission of which they were at the time held as prisoners in the parish jail; but it further shows that at the time each of said parties was brought before that body as a witness, he was informed that the grand jury were engaged in the investigation of the aforesaid homicide, and, consequently, had the right to decline to make answers as witnesses to any question that might tend to criminate himself—that is to say, to render them liable to prosecution for said homicide; but they were each further advised that if he or they undertook to make a statement as to any part of the transaction, he or they must tell all that occurred during the progress of said transaction that came within his or their personal knowledge. It further shows that, subsequent to such notification, certain of said parties did testify as witnesses before the grand jury; but that upon being again interrogated, on a subsequent date, they declined to make answers, and since that time have not appeared as witnesses in the case.

State vs. Donelon et als.

But it also appears that in the meanwhile one of the defendants, upon appearing as a witness before the grand jury, and being interrogated, denied possessing any knowledge of the persons by whom the killing was done, and also denied any criminality in connection with the homicide, stating that at 'the time of the shooting he was a square away, in company of some ladies; that upon being interrogated as to whom those ladies were, he declined to give their names, and upon being interrogated by the court as to his reasons for refusing to give their names, made answer that he was so advised by his counsel, and that if he had given their names they would have been intimidated by the police, and thereupon said party was brought before the bar of the court and committed for contempt of court.

There is no well-grounded objection to the ruling of the trial judge in declining to quash the indictment on the ground stated.

Had the proof disclosed that the party accused who urges complaint of the judge's ruling had been *required* by the grand jury, or the trial judge, to testify before that body against his protest and in opposition to his expressed desire to avail himself of his lawful and constitutional privilege, a clear case would have been made, and an indictment predicated upon such evidence would have been undoubtedly vicious.   Const., Art. 6; Act 29 of 1886.

But it clearly appears that the complaining defendant was advised of his prerogative to decline altogether to make answers in reference to the homicide on the ground that he *might* incriminate himself by testifying, but that after being so advised he voluntarily chose to disavow all knowledge of the homicide, and to give in his evidence, generally, on the whole case.   And being subsequently pressed to state the names of his female companions, and refusing to give them, he was properly dealt with and treated in contempt of court for declining to give proper answers to the questions propounded. Roscoe's Crim. Ev., pp. 339, 231, 232, 234, 244.

There is nothing in the record to indicate any impropriety or irregularity of the proceedings touching the interrogation of the defendants before the grand jury, notwithstanding the fact that they were subsequently indicted.

## II.

Objection is urged to the competency of a juror on the ground that, upon being interrogated as to whether he could give the accused a fair trial on hearing the evidence he answered that he did not be-

lieve he could. But the judge, on pursuing the interrogation of the juror, found and decided that he was a perfectly competent juror; and subsequently to this ruling having been made, counsel for the accused proposed to reopen the investigation and prosecute the inquiry further, and thereupon demanded the right to have the testimony reduced to writing, and appended to the record in case of an appeal, and said demand was by the trial judge refused. In thus refusing the request to reopen the investigation the judge acted on the line of official duty and discretion. No sufficient reason is assigned for the reopening of the investigation, and it is impossible to discover what good would have been accomplished by it. The defendant had had his day in court. There had been abundant opportunity afforded him of ascertaining the juror's qualifications, and upon hearing and considering the testimony taken, the judge held that he was competent. That was the end of the matter in so far as that court was concerned. Such is the view entertained by this court in State vs. Mangham, 35 An. 619.

Having examined and approved the proceedings of the judge below, in this regard, dispenses us, of necessity, from deciding in reference to his refusal to permit the testimony counsel proposed to offer, to be reduced to writing. The judge had no occasion to rule on the question at all, as he declined to reopen the case.

### III.

In the course of the trial the prosecuting officer proposed to introduce in evidence the alleged confessions of one of the accused, and to the introduction of which various objections were urged, and same having been overruled, defendant's counsel reserved a bill of exceptions.

As counsel lay great stress upon this bill of exceptions and have devoted the greater part of their brief to its discussion—as well as the greater part of their oral argument—we have thought proper to reproduce the alleged confession, objections and ruling of the court, for greater accuracy of statement and decision, and which are as follows, to-wit:

"NEW ORLEANS, August 8, 1892.

"My name is Dennis Donahue and I reside at No. 13 Poeyfarre street. I was standing at the St. Mary's Market, at the Tchoupitoulous street end, Sunday at about 9 o'clock P. M. I saw Corporal

Fitzgerald and Officer Moore having a man named Dan Conners alias Pikey Dan under arrest. I saw Officer Moore strike Conners on the head with his club, when Joe Johns and John Donley began firing their pistols at the officers.

"Joe Johns and John Donley and others had previously been firing their guns at the Sunday School on Tchoupitoulas between S. Market and Delord street. The following parties were also there: Red Riley alias Sullivan, Matt Gallagher, Bull Bartel, Hugh Lagan. After the shooting the crowd dispersed; I then went home, and when the officers came to my house I ran out by the back way. While passing through the market I was arrested by Officer Schultze, and Keiffer was also there.

"When the officers were fired upon they were standing at the patrol box. Some one struck Corporal Fitzgerald and he staggered and fell and then the firing began; I was at a distance of about fifteen feet away from the officers when the shooting took place.

"The above is a statement made by Dan Donahue.

"Witness:

    (Signed)         "CAPT. BARRETT..

                     "SERGT. WALSH.

                     "ANDREW DEBERGUE.

"And then and at the same time that the assistant district attorney stated to the court that he now proposed to read to the jury the before recited statement of said Dennis Donahue, the accused, John Donelon, by his counsel, objected to the alleged statement of Donahue being offered in evidence and being read to the jury for the following reasons, to-wit:

"First. Because the alleged confession was not free and voluntary and without inducement or threat.

"Second. Because the pretended confession of Donahue is not a confession in the legal sense of the law; that the pretended confession is not an admission or declaration of his agency and participation in a crime, and is no acknowledgment of his guilt. Nor is it a waiver by the said Donahue of his right to have certain facts against him technically proved.

"Third. Because the alleged confession can only be used and is only admissible in evidence against himself. Because anything in the alleged confession which speaks about other persons must be eliminated from the said confession before it is offered to the jury.

Because the confession made by one of several persons jointly in-
dicted for the same offence, as in this case, and being tried together
by the same jury, is not admissible in evidence against any one but
himself.   No matter if the confession be made to the police officer or
during the trial even by a plea of guilty.''

On the first ground, the court ruled that the testimony adduced
clearly satisfied him that a proper foundation had been laid for the
introduction of this confession, no threats, intimidation, or violence
having been shown, whereby same was extorted or unduly influenced.
As there seems to be no serious controversy in regard to this state-
ment having been voluntarily made, we will accept the judge's state-
ment as correct and proceed with the discussion on that hypothesis.

On the other objections the court stated its opinion to be that it
was a settled rule of law that when two or more persons are jointly
indicted for the commission of one and the same offence, the confes-
sion of one, made in the absence of the others, *implicating himself
and the others*, may be properly admitted in evidence, but is to be
received as evidence against the party making it, and the jury should
be so instructed.

But the contention of the defendant's counsel is that '' the pre-
tended confession of Donahue *is not a confession at all* in the sense
of the law, because it is not an admission or declaration of his agency
and participation in a crime, *and is no acknowledgment of his guilt.*''
And it is further to the effect that '' anything in the alleged confes-
sion which speaks about other persons must be eliminated from the
said confession before it is offered to the jury.''

The judge below placed his ruling distinctly upon the precept an-
nounced by Greenleaf, as controlling the question under considera-
tion, and which is as follows, viz.:

'' For, as has already been observed respecting admissions (Sec.
201), unless the whole is received and considered, the true meaning
and import of the part which is good evidence against him can not
be ascertained.   But if, after the whole statement of the prisoner is
given in evidence, the prosecutor can contradict any part of it, he is
at liberty to do so; and *then the whole testimony is left to the jury for
their consideration, precisely as in other cases where one part of the
evidence is contradictory to another*.

'' For it is not to be supposed that all the parts of a confession are
entitled to equal credit.   The jury may believe that part which

charges the prisoner, and reject that which is in his favor, if they see sufficient grounds for so doing. If what he has said in his own favor is not contradicted by evidence offered by the prosecutor, nor improbable in itself, it will naturally be believed by the jury; *but they are not bound to give weight to it on that account, but are at liberty to judge of it like other evidence, by all the circumstances of the case.*

" And if *the confession implicates other persons by name, yet it must be proved as it was made, not omitting the names; but the judge will instruct the jury that it is not evidence against any but the prisoner who made it.*" (Italics are ours). 1 Glf., Sec. 218.

The judge, in the instant case, admitted the alleged confession to go to the jury under the instructions that author has enjoined and pointed out. That was all he was required to do or could have done under the circumstances.

The confession was reduced to writing and signed by the party, and his signature was attested by three witnesses. It purports to describe the *locus* where the homicide took place, and to enumerate the persons who were present and participating therein, stating that he was only fifteen feet from the deceased when the shooting took place, and saw him when some one struck him, and he staggered and fell.

That was certainly an exceedingly important document, bearing directly upon the homicide, and related parts of the *res gestæ*.

If, in the future progress of the trial, evidence should have developed active participation in the homicide on his part, this document would have furnished damaging proof against Donahue, at least. Hence it was certainly admissible in evidence against him, notwithstanding it did not contain a full recital of the part he had taken in the homicide, if any.

It is a well recognized and ancient rule of evidence that a party can not be controlled as to the *order* of introducing testimony, and it is not perceivable that the introduction in evidence of a confession furnishes a reason for its relaxation.

It was not proper or competent for the trial judge to have emasculated the confession by causing the names of the persons implicated to be stricken therefrom. All he could have done was to instruct the jury that such a confession was not evidence against any party other than the one who made it. This was what the trial judge did, and it was sufficient.

While it appears that Donahue was tried and convicted, he has not appealed; and under instructions of the court the defendant, Donelon, was not affected prejudicially by the allowance of this confession in evidence.

The learned counsel for the defendant, Donelon, has presented this branch of his case with signal ability, and has collected a vast array of authority on the question under consideration, which has been quite instructive as well as entertaining, but we feel constrained to adhere to the simple precept announced by Mr. Greenleaf as the safest guide.

IV.

A witness on the part of the State was asked the following question, to-wit:

"Q. Were any of the prisoners at the bar—were either of the parties that he refers to, *at the shooting he speaks of, and which he fixes to be half an hour before the shooting which resulted in the death of Police Corporal Fitzgerald?*"

Thereupon defendants, through their counsel, objected to the question propounded for the reasons following, to-wit: Because anything that took place half an hour anterior to the shooting which resulted in the death of Corporal Fitzgerald can have no bearing on the case, and is not part of the *res gestæ*.

Counsel for the State, in answer to the objection of defendants, said to the court: "We offer it as part of the *res gestæ*, and we propose to show that this was the commencement of the whole transaction, and that this was the shooting that led to the shooting of the officer—that this was the shooting that led to the attempt at rescue, and this shooting resulted in the shooting of Corporal Fitzgerald."

The court thereupon overruled defendants' objection, as above stated, and the witness then answered "Yes."

Counsel for the defendants objected to said ruling and reserved this their bill of exceptions, and respectfully tendered the same to the court for its signature.

In the course of the argument the district attorney propounds this question, to-wit:

"The question is, whether or not, under the circumstances of this case, it was competent to show the conduct of these defendants which brought the officers to the scene of the shooting, and what occurred

State vs. Donelon et al.

from the coming of the officers until the shooting of the fatal shot and the flight of the murderers."

He then appends the statement of the district judge as an answer to that question, and from which we extract the following, viz.:

"The proof in the case established that the crowd, among whom were some of the accused, had been engaged in discharging their pistols in the market, and its immediate vicinity, and that of these shots, two were fired by one of these defendants, Donelon. That this shooting commenced about half an hour before the killing of Corporal Fitzgerald, and was what caused the officers to come upon the scene and attempt the arrest of one of the defendants, and that it was during the attempt to convey him to the patrol box, and to hold him there to await the coming of the patrol wagon, that the attack was made upon the officers which resulted in the killing of Officer Fitzgerald. The proof is that from the arrival of the officers on the scene until the firing of the shot which resulted in the death of Fitzgerald, the officers were engaged in the attempt to arrest and in repelling the assaults upon them. That the whole was one continuous, uninterrupted transaction, all of the *res gestæ*. This was established not only by Andreas Andresson, but by all the witnesses who were examined upon either side upon this branch of the case."

Under this state of facts there can be no reasonable doubt of the evidence sought relating to the *res gestæ*, notwithstanding a half hour intervened between the shooting to which the witness' attention was directed, and at which one or more of the defendants were supposed to have been present, and the time at which the homicide happened.

The shooting which first occurred was the commencement of the transactions which resulted in the fatal *rencontre* in which Fitzgerald was killed. They were continuous and uninterrupted.

*Res gestæ* are declarations or circumstances made admissible as original evidence by reason of their connection with the particular fact under investigation. 1 Greenleaf, Sec. 108, p. 161.

The test is whether the circumstance put in evidence "is so connected with the main facts under consideration as to elicit its character, to further its object, or to form, in conjunction with it, one continuous transaction." Id.

And Mr. Wharton states it to be the correct rule that there are *no fixed limits of time* within which *res gestæ* can be arbitrarily confined,

48

but that they vary, in fact, with the facts of each particular case. Whar. Crim. Ev., Sec. 262.

The facts and circumstances relied upon as furnishing proof of *res gestæ* should be shown to be "necessary incidents of the litigated act;" or, in other words, "they must stand in immediate causal relation to the act, and become part of the action immediately producing it or of the action it immediately produces." Id., Sec. 263.

To this purport are all the recent authorities. State vs. Morris, 38 An. 382; State vs. Estoup, 30 An. 221; 2 [Bishop's Crim. Proc., 3d Ed., Sec. 626.

## V.

During the progress of the examination of the witnesses on the part of the defendants many of them were interrogated in regard to the general good reputation of Donahue, *one* of the defendants, for peace and quietude, and upon the same subject the witnesses were cross-interrogated by counsel for the State.

This resulted in quite a number of bills of exception, and without going into details or discussing the various bills of exception *seriatim*, we deem it sufficient to cite the subjoined extract from the opinion expressed by the trial judge, as fairly illustrative of the character of the evidence that was adduced, and the reasons that influenced him to admit it to the jury, to-wit:

" This was objected to upon the ground that ' the witness having been examined as to the general reputation for peace and quiet of Donahue and nothing else, the question propounded by the assistant district attorney was not properly pertinent to the issue; it had a tendency to bias and prejudice the jury against the accused, and that the accused could not be held responsible for the reputation of other people, as it was the reputation of defendant at issue, and not that of others.'

" There was no attempt made during the cross-examination of any of the witnesses to attack the reputation of the defendant, Donahue, by proof of particular facts and charges. The examination was limited strictly to the knowledge of the general character for peace and quiet, honesty, integrity and good behavior on the one hand, and the viciousness, lawlessness, profligacy and generally infamous character of the defendant and his associates upon the other hand.

" I consider that as the defendant had shown the class with whom

he associated, it was competent for the State in rebuttal of any attempt to prove generally his good reputation, to show the general turpitude of his associates, and the estimate in which they were held by those who were conversant with their conduct.

" While it is true the purpose of the question propounded was to damage the case of the defendant by proving that his associations were generally bad, it is not pretended that the answer to the question had that effect."

There is no well-grounded objection to the statement of the judge, or as to its correctness as a sound legal proposition, with some modification in its terms. In such matters the rule appears to be that evidence adduced for the purpose of rebutting other evidence in respect to character must be confined to general reputation, and not descend to proof of particular and specific facts.

But the judge further states that the greater part of this evidence was admitted without objection from the defendant's counsel, and that far the greater part of the objections urged and bills of exception taken relate to *reiterations* of same testimony, subsequently. Of course, it is unnecessary to discuss such a proposition as this. The testimony having been delivered in the presence and hearing of the jury, it has gone beyond reach or the power of the court to recall it, and it is the undeniable province of the jury to consider it in making up their verdict. State vs. Parker, 7 An. 86.

## VI.

Officer Moore was introduced and interrogated on the part of the State, and on cross-interrogation he was asked by defendant's counsel the following questions, with the purpose and object of laying the bases for his contradiction, to-wit:

" Q. Did you not on the night of the shooting of Corporal Thomas Fitzgerald, and after the shooting, at the corner of Calliope and Magazine streets, at about 11 o'clock that night, say to and in the presence of Edward E. Easton, Patrick Canavan and one Jones, that the night of the shooting was the first time that you had spoken to Corporal Fitzgerald in over a year?"

And the second question propounded to said witness, Richard Moore, on his cross-examination being:

" Q. Did you not on the night that Corporal Fitzgerald was shot, and after the shooting, say in Feeney's grocery that you had to load

up your pistol, as you had fired every shot out of it and you might need it again, and did you not say so in the presence of Mr. Feeney, the owner of the grocery, and at about half past 10 o'clock that night?"

Thereupon the district attorney submitted to the court the following view in reference to the admissibility of the evidence, viz.:

" The State submits that it is not competent to contradict the witness as to either one of the two statements as to which foundation is laid; these matters are *collateral*, and by the answers of the witness they are bound. And that the test as to whether or not it be a matter as to which he could be contradicted, is whether or not that same evidence could be heard in support of their defence."

And upon this discussion the trial judge made this statement, viz.:

" The evidence in the case established beyond all doubt that an unjustified and murderous assault, the result of an unlawful conspiracy entered into by the defendants and others, was made upon the deceased, a corporal of the police, and two other members of the police force, who in the discharge of their duties were attempting to arrest and convey to the police lock-up one of the defendants, Connors. All of the proof was to the effect that after a warning cry to their confederates who were engaged in a scuffle with the police to ' stand wide,' a number of persons, among whom were three of the defendants, without provocation, opened fire upon the police, and that something like twenty or twenty-five shots were fired. One of these shots caused the death of Fitzgerald. After the shooting had commenced, and while one of the defendants, Klienhole, who had knocked down, and had been engaged in a struggle upon the ground with, one of the officers named Moore, had gotten to his feet, he was fired upon by Officer Moore. Corporal Fitzgerald, after he had been shot, fired once in the air. During the course of the cross-examination of Moore—under this proof—the defendants propounded to him the two questions aforesaid."

Animadverting upon the questions and the interpretation placed upon them by the district attorney, the trial judge further observed, to-wit:

" While, as a matter of fact, the evidence established conclusively that the killing of Fitzgerald was done by one of the defendants, or by one of those who assisted them, and was not and could not have been done by Moore, it was just as much murder, under the circum-

stances of the case, if the killing had been done by Moore, while re-sisting the felonious assault of these men, as if by the accused them-selves, provided the killing by Moore had been accidental, and had been caused at a time when he was endeavoring to repel an armed assault upon himself. Therefore, in my opinion, the entire question of the admissibility and non-admissibility of this proof was depend-ent upon whether or not the defence proposed to assert that Fitz-gerald was killed by Moore, and that the killing was *intentional*. They declined to assume this position, and the only remaining in-quiry was whether or not as to this collateral matter they were or were not bound by the answers of the witness Moore."

" When a witness is cross-examined on matters *collateral* to the issue his answer can not be subsequently contradicted by the party putting the question. The test whether the fact inquired of in cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case tending to estab-lish his plea? This limitation, however, only applies to answers on cross-examination. It does not affect answers to an examination-in-chief." Whart. Crim. Ev., Sec. 484.

" It is a well settled rule that a witness *can not be cross-examined as to any fact which is collateral and irrelevant to the issue* merely for the purpose of *contradicting* him by other evidence, if he should deny it, thereby to discredit his testimony. And, if a question is put to a witness which is collateral or irrelevant to the issue, his answers can not be contradicted by the party who asked the ques-tion; but are conclusive against him." 1 Greenl. on Ev., 15th Ed., Sec. 449; 1 Roscoe Cr. Ev., p. 100; Starkie on Ev., 9th Ed., p. 210; Best's Prin. Ev., Sec. 644.

The principle of law involved is that the subject matter of the testimony to be contradicted must also be material and relevant to the issue, and the contradiction must not be merely for the purpose of discrediting the witness' testimony *generally* by showing that in immaterial matters his statements are untrue. State vs Clark and Boyd, 38 An. 105; Whart. Crim. Ev., Sec. 482 *et seq.;* 1 Glf. Ev., Secs. 449, 462.

## VII.

After a careful examination of the voluminous record and very elaborate briefs on either side, we have reached the conclusion that there is no merit in the defendant's complaint of the proceedings in

the court below, and the judgment should be affirmed, and it is so ordered.

### ON APPLICATION FOR REHEARING.

WATKINS, J.   Application is made on the part of the two defendants, Joseph Johns and Dennis Donahue, for relief, upon the representation "that they have been *condemned* in the above entitled prosecution under an assumption erroneously made by this honorable court (that) they never appealed to this tribunal from the verdict and sentence therein rendered."

This is a remarkable statement for counsel to make in the face of the record, for our opinion opens thus, viz.: "This appeal is prosecuted from the judgment and sentence of the court by John Donelon alone," and concludes thus, viz.: "There is no merit in the defendant's complaint of the proceedings in the court below, and the judgment should be affirmed, and it is so ordered." Certainly, this decree condemned no one other than the defendant plainly referred to, John Donelon, alone. The parties at present complaining were not mentioned or included. Practically, the case, as to them, was left in identically the same position as though they had not appealed at all. It was our impression at the time the opinion was prepared that no other defendant than John Donelon had prosecuted an appeal.

No other defendant than he was represented by counsel at the trial by oral argument or in printed briefs. Nothing in the transcript attracted our attention, at the time, to indicate any participation in the appeal on the part of the defendants now complaining—John Donelon having separately petitioned for an order of appeal.

Since the present application was filed, our attention has been called to the separate and distinct order of appeal that was granted in their behalf; and also to the minutes of this court indicating that they had appeared by counsel and submitted the cause, on their part, on the argument and briefs of the defendant John Donelon.

However, an examination of the record does not disclose any defence other than such as those John Donelon urged, and which were decided against him; and there is in counsel's motion no reason or suggestion offered as justifying any change in our decree except as to its form.

It is evident that the decree should be amended so as to include the two defendants, Joseph Johns and John Donelon; but for this purpose a rehearing is unnecessary.

It is therefore ordered and decreed that the judgment and decree heretofore pronounced be so altered and amended as to embrace the two defendants, Joseph Johns and Dennis Donahue, and that, as thus amended, same remain unchanged.

Rehearing refused.