(46 South. 691.)

No. 17,072.

STATE v. FIRMATURA et al.

(May 11, 1908.   Rehearing Denied May 25, 1908.)

1. GRAND JURY—EMPLOYMENT OF INTERPRETER — PRESENCE AT EXAMINATION OF WITNESSES.

An interpreter is regarded as a witness, and as such may be called by the grand jury and sworn by the foreman, without special appointment by the court. When called to translate the testimony given by other witnesses, he must necessarily be present when such witnesses testify, and so long as he confines himself to the discharge of the function for which he is called his presence is unobjectionable. To hold otherwise would be to impose restrictions which the law does not impose upon the power of the grand jury to avail themselves of an ordinary and necessary instrumentality for the discharge of their duties.

2. SAME—PERSONS WHO MAY ACT.

One is not disqualified from acting as an interpreter, in proceedings before the grand jury, by being called as a witness to the facts, nor is he necessarily disqualified by reason of his being a deputy sheriff and taking an active part in the effort to discover the author of the supposed crime which is being investigated; and where the same person who interpreted in the proceedings before the grand jury renders that service satisfactorily and without objection during the subsequent trial of the party indicted, an appellate court will not reverse the verdict upon the basis of unsupported allegations, contained in a motion to quash the indictment, which upon the hearing of such motion were denied under oath, as to the unfitness of the interpreter to act before the grand jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, § 77; vol. 50, Witnesses, §§ 5, 812.]

3. INDICTMENT AND INFORMATION—MOTION TO QUASH—GROUNDS.

Where several persons are jointly indicted for the same offense and are in custody, either

may be called by the grand jury to testify as against the others, and where the one called appears willingly, and, testifying after being informed that he could not be compelled to incriminate himself, is not shown to have given any incriminating testimony, a motion to quash the indictment on the ground that he was forced to appear before the grand jury and testify against himself is properly overruled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 483.]

4. CRIMINAL LAW—EVIDENCE—TESTIMONY OF ACCOMPLICES—CORROBORATION—NECESSITY.

　　Corroboration of the testimony of a codefendant or accomplice is desirable, but not always indispensable, for conviction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1124–1126.]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Jack Firmatura, Frank Bongiovanni, and others were jointly indicted for murder. Bongiovanni was granted a severance, and appeals from a conviction. Affirmed.

Mitchell & Rosenthal and Milton Carter Elstner, for appellant. Walter Guion, Atty. Gen., and Leland Hugh Moss, Dist. Atty. (Lewis Guion and Edwin Franklin Gayle, of counsel), for the State.

## Statement of the Case.

MONROE, J. Jack Firmatura, Jack Abate, and Frank Bongiovanni having been jointly indicted for murder (and Victor Abate having been charged in the same bill with being an accessory before the fact), Bongiovanni was granted a severance, and, having been convicted, without capital punishment, has appealed.

He relies on two bills of exceptions—the one, to the overruling of a motion to quash the indictment; the other, to the sustaining of an objection, interposed by the state's attorney, to a question propounded on voir dire to certain persons called to serve as jurors. These bills will be considered seriatim.

## Opinion.

1. The motion to quash alleges substantially that Tony Patello, a deputy sheriff, and himself a witness before the grand jury, questioned the witnesses and otherwise participated in the proceedings of that body; that an interpreter can be appointed to assist the grand jury only when such appointment is authorized by statute; that no such statute exists; and that no such appointment was made, or, if made, was made without authority of law, and to mover's great prejudice, in this:

"That the defendant is an Italian, and the said Tony Patello, being in the grand jury room during the investigation of said cause, addressed the witnesses there called by the grand jury in the Italian language, the witnesses answering in Italian; the said Tony Patello there and then pretending to interpret to the grand jury the answers of the witnesses, not, however, without making suggestions to the witnesses while answering."

The motion also alleges that Patello had been zealous in the prosecution, that he had a personal animosity, and that his demeanor and expression of opinion prejudiced the grand jury against defendant. The motion further alleges that, while in the custody of the officers of the law, mover was forced to appear before the grand jury and testify against himself.

In connection with this bill we find the following admissions of record, viz.:

"(1) That Tony Patello was present in the grand jury room while witnesses were being examined, acting as interpreter. (2) That said Tony Patello was not a member of the grand jury, and that he was not appointed nor was he sworn as an interpreter by this court, but that he was sworn as interpreter by the foreman of the grand jury, and not by the clerk of the court, nor by the court; that no appointment of an interpreter was made by the court, that the said Tony Patello is an Italian; that the defendants are Italians; that the said Tony Patello addressed witnesses called by the grand jury in the Italian language, the witnesses answering in Italian, while he, the said Patello, and the witnesses were in the jury room; that he did this as an interpreter; that the said Tony Patello is a deputy sheriff; and that he had taken an active part in the investigation of said cause and in the arrest of the accused.

(3) That the accused were called before the grand jury, and that they testified in the investigation being conducted then and there by the grand jury into the alleged murder of Joseph Trittico. (4) That Tony Patello was a witness and testified before said grand jury in said cause. (5) That these admissions are not to be construed as barring either the state or the defendant from adducing evidence on the allegations of the motion to quash."

From the evidence offered on the hearing of the motion it appears that the grand jury found it necessary to examine a number of Italians, who could not speak or understand English; that an interpreter was necessary; that, whilst Patello was sworn by the foreman of the grand jury and acted as interpreter, he did not otherwise participate in the action of the grand jury, and was present at their deliberations only when testifying as a witness or when so acting as an interpreter. It also appears that he had no personal animosity against the accused, and that he did not act as interpreter when defendant gave his testimony, as defendant has lived in this country for 10 or 15 years and testified before the grand jury, as he did before the petit jury, in English; the trial judge, after inquiry, declining to allow him to testify through an interpreter. It further appears that the defendant, together with the other parties charged in the indictment, or some of them, being in jail, the sheriff had a conversation with him, and told him that he would probably be called before the grand jury, and "to tell the truth about the matter; that they wanted him to be sure and tell the truth about everything"; and that defendant expressed his willingness to testify, and said:

"Sure, I will tell all I know. I am innocent, and I will tell all I know, and will tell the truth."

It further appears that before defendant gave any testimony before the grand jury he was specifically warned by the district attorney, who says in his testimony:

"With regard to Frank Bongiovanni, I personally informed him, when he came into the grand jury room, that he did not have to testify in the case, as it might incriminate him, unless he was entirely willing to do so. That was done before any question at all were asked him. He testified voluntarily."

It does not appear, nor did the defendant, in giving his testimony on the hearing of the motion to quash, intimate, that he gave any testimony before the grand jury which tended to incriminate him.

The statement per curiam, attached to this bill, reads in part as follows:

"After formal hearing of said motion to quash, the same was overruled, for the following reasons: Because Tony Patello, the interpreter, was necessary for a proper investigation of the case; no member of the grand jury, nor the district attorney, understanding or speaking the Italian language, and the witnesses, who testified through the interpreter, being Italians and not understanding or speaking the English language. He was regularly sworn by the foreman of the grand jury. This was the exercise of a right necessarily vested in the grand jury under our present law, which authorizes the grand jury to hold sessions in the absence of the court. See Act No. 135, p. 216, of 1898.

"The fact that Tony Patello is a deputy sheriff and had taken an interest in ferreting out the murder of Joseph Trittico did not disqualify him from acting as interpreter. * * * He acted as interpreter in the final trial of the case, with a friend of the accused sitting alongside of him (the interpreter), and his interpretation, on the occasion, was unobjectionable. * * * As to the appearance of the accused in the grand jury room, it appears that they did not object to so appearing, and did not object to testifying, after they had been advised of their rights. Besides, the state had the right to use each of the accused, one against the other, as witnesses, and other persons, as was done. * * * The accused never have given any evidence against themselves, but, on the contrary, always contended that they knew nothing of the crime. And Frank Bongiovanni, on his two trials before the petit jury, again voluntarily so testified * * * as a witness in his own behalf. He, having obtained a severance, is the only one tried so far."

An interpreter is regarded, and must be sworn, as a witness (17 A. & E. Enc. of Law, p. 30); and, as the grand jury are authorized to call before them any witness whose testimony they think likely to aid them in their investigations, it follows that they may avail themselves of the services or testimony of an interpreter, to whom, as to any other witness,

the oath required by law may be administered by the foreman (Rev. St. § 2137). It also follows that, if the interpreter is called to translate testimony given by other witnesses, he must be present when such witnesses testify. To hold otherwise would be to impose a restriction which the law does not impose upon the power of the grand jury to avail themselves of an ordinary and necessary instrumentality for the discharge of the duty, which the law imposes on them, "diligently to inquire and true presentment make of all infractions of the criminal law, which may be given to them in charge or may come to the knowledge of any of the members, touching the service in which they are engaged; the jurisdiction of the grand jury being as a general rule, coextensive with that of the court in which it is impaneled and for which it is to make inquiry." 20 Cyc. p. 1334.

As we have seen, the interpreter in the instant case confined himself to the discharge of the function for which he was called, and did not participate, or attempt to participate, in the deliberations of the grand jury, or to influence their finding.

The fact that he was a witness did not disqualify him from acting as interpreter, though his alleged activity as a deputy sheriff might suggest a doubt as to the propriety of his selection, were it not for the fact that he acted as interpreter satisfactorily, and, so far as the record shows, without complaint or objection from the defendant in the trial of the case, and there is no proof whatever in support of the allegations, which he denies under oath, that he entertained any feeling of animosity to the accused, or that he made any suggestions to the witnesses to the prejudice of the accused, or of either of them. As was said by this court in a case decided some years ago:

"The finding of a grand jury is not a verdict or judgment. It amounts, at most, to an accusation."

And if upon his trial, the defendant in a criminal prosecution makes no objection to an interpreter, an appellate court would hardly be justified in reversing the verdict, upon an objection, unsupported by proof of bias or misconduct, to his having acted in that capacity during the inquisition which preceded the indictment, and the less so as, under the settled jurisprudence of the court, the character and sufficiency of the evidence upon which the grand jury bases its finding will not be inquired into. State v. Lewis, 38 La. Ann. 681; State v. Johnson, 116 La. 864, 41 South. 117.

The allegation that defendant was forced to appear before the grand jury and testify against himself is wholly disproved. As to his appearance, the grand jury had an undoubted right to call him as a witness, not against himself, but against the others, who with him were charged with the homicide. It is shown that he appeared willingly; that he was informed "that he did not have to testify, as it might incriminate him, unless he was entirely willing"; and it is not shown or alleged that he gave any incriminating testimony. To the contrary, it appears that he has always insisted that he is innocent, and so, voluntarily taking the stand, testified before the petit jury. We therefore conclude that the bill under consideration was not well taken. 17 A. & E. Enc. of Law, p. 1288; State v. Donelon, 45 La. Ann. 744, 12 South. 922.

2. Defendant's counsel, in his examination on voir dire of persons called to serve on the jury, asked the question:

"It may develop on the trial of this case that the state will rest solely for conviction upon the testimony of an alleged codefendant, or an alleged accomplice in the commission of the crime. In that event, should the court charge you that you should not, under the law, return a verdict of 'guilty' upon such testimony, and that you should receive such testimony with great care and caution, and that, before you would be justified in returning a verdict of guilty, the testimony of the supposed accomplice should be corroborated by other evidence, would you take the law from the court, and act upon it?"

The question was objected to, on the ground that it does not correctly state the law, and the court propounded to the proposed jurors the following, or a similar, question, to wit:

"Mr. ——, the law is that the juror is the judge of the law and the evidence. The law the juror is morally bound to take from the court. Now, if accepted as a juror in this case, would you abide by the law as charged you by the court?"

And, answers being given in the affirmative, the objection of the state to the question propounded by defendant's counsel was sustained.

Corroboration of the testimony of a defendant or accomplice is desirable, but not always indispensable, to conviction. Marr's Cr. Dig. § 427. The ruling complained of was therefore correct.

Judgment affirmed.