**UNITED STATES, Appellant,**

v.

**Marcelo M. HECTOR, a/k/a Marcelo Martinez, Appellee.**

**No. 6529.**

District of Columbia Court of Appeals.

Argued Sept. 26, 1972.

Decided Dec. 28, 1972.

Joseph E. di Genova, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John F. Finnegan, Jr., Asst. U. S. Attys., were on the brief, for appellant.

William F. Dow, III, Washington, D. C., for· appellee.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

On March 13, 1972, a two-count indictment was filed in the Superior Court, charging appellee with burglary in the second degree and grand larceny. At a status hearing on May 19, 1972, the trial court heard argument with respect to a motion which had been filed by appellee's counsel. In part, that motion urged that the indictment be dismissed. At the conclusion of the hearing, the motion to dismiss was granted. We reverse and remand, thus reinstating the indictment.

■ A threshold jurisdictional question is presented. Since the dismissal of the indictment created no bar to the seeking of a

new indictment by the Government, it is argued on behalf of appellee that the prosecution was not terminated by the dismissal order and hence that the order is not reviewable. Such a contention is without merit. D.C.Code 1967, § 23–104(c) (Supp. V, 1972) provides:

> The United States or the District of Columbia may appeal an order dismissing an indictment or information or otherwise terminating a prosecution in favor of a defendant . . . except where there is an acquittal on the merits.

Such language is unambiguous. Additionally, it is obvious that an order dismissing an indictment or an information terminates a prosecution in the sense that such an order completely severs the ties of the criminal justice system with the accused. He immediately becomes entitled to discharge from bail or custody. Although that severance may be only temporary (as here where the dismissal was without prejudice and the charges may be brought again[1]), the requisite attributes of finality are present and the order is appealable under D.C.Code 1967, § 11–721 (Supp. V, 1972).[2]

The difficulties in this case arise from the fact that the complaining witnesses (and the defendant as well) are members of Washington's Spanish-speaking community. Appellee was arrested on the basis of an identification by an eyewitness to (and victim of) the alleged burglary and larceny. A preliminary hearing was held on January 19, 1972. For reasons not appearing in the record before us, the Government then was unable to demonstrate probable cause, and the preliminary hearing judge dismissed the case.

The Government subsequently presented the matter to the grand jury. The two complaining witnesses were women who do not speak English. Faced with that problem, the United States Attorney's office contacted Edgar Garay, an employee of the Superior Court, to request his assistance as an interpreter. Mr. Garay is a native of Peru, where Spanish is the primary language. He graduated from high school there. He has been in the United States for ten years, and has been an employee in the Small Claims Branch of the Superior Court (and its predecessor, the Court of General Sessions) for six years.

Mr. Garay met with the two witnesses to discuss their prospective testimony. Thereafter, he interpreted their testimony before the grand jury. The subsequent indictment was based principally (if not entirely) on the testimony of those two Spanish-speaking witnesses as interpreted by Mr. Garay.

The pretrial motion which was filed on behalf of the defendant was entitled "Motion for Production of Transcript of Grand Jury Proceedings and Other Appropriate Relief." Three forms of relief were requested: (1) production of the complete transcript of the grand jury proceedings; (2) dismissal of the indictment and a stay of any further grand jury proceedings "until a competent interpreter has been first qualified by this Court"; and (3) the granting of "a hearing to determine the competency of the interpreter in the instant case in regards to his ability to provide literal translation and whether he is sufficiently impartial to serve as an interpreter."[3]

---

1. Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394 (1962).

2. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); cf. Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

3. Appellee's challenge to Mr. Garay's impartiality was based upon nothing more than the fact that he is a Superior Court employee. Such a contention, wholly without merit, was rejected below and has been abandoned in this court. E. g., see State v. Firmatura, 121 La. 676, 46 So. 691 (1908), where the court approved interpreting before a grand jury by a deputy sheriff who was himself to be a witness.

The requested hearing was held. Part of the cross-examination of Mr. Garay by defense counsel went as follows:

Q. How long did you have occasion to speak with these witnesses before you went into the grand jury?

A. About twenty minutes, or thirty, I guess.

Q. Is it fair to say that you knew substantially what they were going to testify, before they went in?

A. Yes, I did know, yes.

Q. . . . I take it there were some things that were told to you in Spanish that you could not translate literally into English, is that correct, during the course of that grand jury?

A. No, in this case I did translate everything. I say that sometimes, you know, when you have to translate English to Spanish, that you could not translate literally word by word.

Q. But in this case you contend that you translated everything word by word?

A. That's correct; I didn't have any difficulty on this one.

The trial court later directed the following question to Mr. Garay: "Have you ever sought to qualify with the Civil Service Commission or any other department of government as an interpreter?" His reply was negative. Defense counsel asked: "Have you ever taken the Foreign Service language test?" Mr. Garay answered that he had not. He further testified that he had served as an interpreter in approximately ten trials previously.

Principally underlying appellee's position before the trial court is the so-called Jencks Act, which provides essentially that relevant prior statements made by a particular Government witness must be made available to a defendant after the witness has testified in a trial.[4] A 1970 amendment to the statute specifies that the term "statement" includes "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e)(3) (1970). Appellee's basic contention before the trial court was that his ability to impeach the Government's witnesses at the impending trial would be impaired in the absence of a theoretically perfect transcript of the witnesses' grand jury testimony.

At the conclusion of the hearing, the trial court found that "Mr. Garay has given the Court very able assistance on numerous occasions . . . and has been found qualified by other judges of this Court . . . ." Notwithstanding such views, the judge concluded:

[T]he Court nonetheless finds that Mr. Garay has not been qualified as an interpreter by any of the normal objective standards in terms of the taking of an examination and the meeting of the civil service qualifications, and the Court further finds that insofar as the grand jury minutes are made available in major part for the purpose of impeachment, that the accurate translation of each and every word, except insofar as language idiom may make literal translation impossible, is important . . . . With those findings, the Court does dismiss the indictment.

We commend and endorse the trial court's stated concern "about the very highest standards in each aspect of [the] criminal justice process". Nonetheless, we are compelled to disagree with the result reached.

■ In considering what is involved in this case, it is important to recognize what

---

4. 18 U.S.C. § 3500 (1970). While the statute does not direct the production of a prior statement until after a witness "has testified on direct examination in the trial of the case", the requirement also comes into play after a Government witness has testified at a pretrial hearing on a motion to suppress. United States v. Dockery, D.C.App., 294 A.2d 158 (1972).

is not involved. First, as has been noted, defendant's counsel normally would not become entitled to the minutes of a grand jury witness' testimony until the witness has testified at trial (or on a pretrial motion).[5] The record before us does not include the interpreted testimony, and analysis thereof is neither pertinent nor possible.[6] Second, we are not dealing here with the exercise of a trial judge's properly broad discretion *at trial* in determining whether a proffered interpreter is qualified to function after jeopardy has attached.[7] Third, no challenge has been directed against the adequacy of the testimony to support the indictment, an inquiry which is permissible only in extraordinary circumstances. *E.g.,* Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); United States v. Marshall, 471 F. 2d 1051, (D.C.Cir.1972). We are concerned here with a ruling to the effect that an interpreter who assists the grand jury process must meet objective qualification standards (which, incidentally, are insufficiently explained or defined in the record before us) in order for an indictment to withstand challenge.

There is, of course, no question but that a defendant has a right to move to dismiss an indictment.[8] However, in considering a collateral attack upon action taken by a grand jury, it must be remembered that an indictment is "merely the formal manner of accusing a person of a crime in order to bring him to trial." Instruction No. 2.06, Criminal Jury Instructions for the District

of Columbia (2d Ed. 1972). Essentially, the returning of an indictment by a grand jury constitutes a determination of probable cause.

 It long has been recognized that an indictment is not rendered invalid if based in part on evidence which is incompetent. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Further, hearsay testimony alone may support an indictment. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L. Ed. 397 (1956). The potential mischief which would result from freely sanctioning pretrial challenges to grand jury proceedings was recognized at an early date in *Holt, supra,* 218 U.S. at 248, 31 S.Ct. 2. As the Supreme Court later stated in *Costello, supra,* 350 U.S. at 363, 76 S.Ct. at 408:

If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.

---

5. *But see* Super.Ct.Cr.R. 6(e), referred to in note 8, *infra.*

6. It should be borne in mind that "there is no requirement that grand jury proceedings be recorded in the first place." Durant v. United States, D.C.App., 292 A.2d 157, 159 (1972); *see* 18 U.S.C. § 3500(e) (3) (1970).

7. In a case in which an interpreter is used, a complete transcript would be achievable only if the court reporter were bilingual and reported every word in both languages. Even that unrealistic level of performance could not always be realized,

as, for example, in a case involving a witness who could not speak, which would necessitate reliance upon an interpreter skilled in the use of sign language.

8. Illustratively, *see* Super.Ct.Cr.R. 6(b) (2), relating to a motion to dismiss an indictment "based on objections to the array or on the lack of legal qualification of an individual juror," and Rule 6(e), which authorizes a court to order the disclosure of proceedings before a grand jury "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

The Court in *Costello* then referred to the grand jury institution as one historically "in which laymen conduct their inquiries unfettered by technical rules", and concluded (350 U.S. at 364, 76 S.Ct. at 409):

> In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.[9]

We conclude that no aspect of this case warrants deviation from these well-established principles. The record reflects among other facts that the interpreter in this case is essentially bilingual, having been raised and educated in a country where Spanish is the native language, having lived in the United States for the last ten years, and having been a court employee in the District of Columbia for more than six years. While obviously the United States Attorney's office should use a competent person whenever an interpreter is needed, Mr. Garay's qualifications were made apparent at the hearing below. He testified without contradiction that he "didn't have any difficulty" interpreting the witnesses' testimony before the grand jury, and the adequacy of that testimony to support the indictment is unchallenged. But for the erroneous adoption of a presumed objective qualification standard, the record reflects that the trial court basically did consider the interpreter to be competent. Once such a conclusion was reached, the motion to dismiss the indictment should have been denied.[10]

The apparent reasoning behind the trial court's ruling was a belief that dismissal was required by virtue of the Jencks Act's requirement that grand jury statements be produced for a defendant's use at trial. As amended in 1970, 18 U.S.C. § 3500(e)(3) provides access to a witness' statement before a grand jury "however taken or recorded," as well as to a transcription thereof "if any". These are terms of flexibility, not rigidity, and there is nothing to indicate that the statute was intended in any way to impinge on the time-honored concepts which permit the grand jury process to function with a minimum of formality and a virtual absence of outside interference. Moreover, to hold that the Jencks Act should be a controlling factor in determining the validity of an indictment would be to create higher standards for grand jury testimony than those which exist for other statements within the purview of the Jencks Act. *See, e.g.,* Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). There is no basis for doing so.

We conclude by noting that it is not for us to make a prospective determination as to Mr. Garay's competence to function as an interpreter in any future trial. Such a question would be committed to the discretion of the trial court if and when Mr. Garay again is proffered as an interpreter. Our basic conclusion in this proceeding is that once the trial court recognized the interpreter's basic competence, it was erroneous to establish an objective qualification standard not otherwise required by law and grant the motion to dismiss the indictment.

Reversed and remanded.

---

9. *See also* Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128 (1962).

10. Super.Ct.Cr.R. 6(d) sets forth those who may be present in a grand jury proceeding. It includes "interpreters when needed" and "a stenographer". Just as the trial court may not seek to establish ad hoc standards for the qualifications of a court reporter, so may it not for interpreters.