(41 South. 117.)

No. 15,915.

STATE v. JOHNSON et al.

(March 12, 1906. Rehearing Denied April 9, 1906.)

1. JURY — RETURN OF JURY COMMISSIONER — IMPEACHMENT.

A jury commissioner cannot be heard to contradict or impeach the return of procès verbal made by him under the sanctity of his official oath.

2. SAME — JURY LIST—REVISION — STRIKING NAMES FROM LIST.

The purpose of the law (Act 135, p. 216, of 1898, as amended by Act 58, p. 136, of 1904)

is to provide, as nearly as practicable, 300 competent men from among whom grand and petit jurors are to be drawn, which number is to be made good, every six months (after striking from the list the names of those who have served, died, removed, from the parish, or become exempt or disqualified), by supplementing such list with new names, equal in number to those stricken therefrom. The procès verbal of each successive drawing should show the names of the jurors then drawn, as also the names of those who have died, removed from the parish, or become exempt or disqualified, since the last drawing, and whether those names (as also the names of the jurors previously drawn) are stricken from the existing list by having a line drawn through them with a pen or pencil, by being obliterated in some other way, by being cut out of the paper, or by being checked in such manner as to indicate to the commissioners that the bearers are no longer available for service as jurors, is immaterial, provided enough new names be added to keep the number of competent jurors available for service at 300 or (allowing for errors and accidents) at approximately that number.

3. SAME—VENIRE—QUASHING—FRAUD.

The fraud required by section 15 of Act 135, p. 223, of 1898, to be shown as cause for the quashing of the venire of jurors is actual fraud or such nonobservance of the statute as will justify the inference of actual injury to the accused.

4. GRAND JURY—PLACE OF MEETING.

There is nothing in our law which requires a grand jury engaged in the investigation of crime to obtain permission of the court to visit the scene of such crime, within its territorial jurisdiction, or which deprives it of the right to meet at other places within the limits of the parish seat, than the courthouse.

5. CRIMINAL LAW—SEVERANCE OF TRIAL—DISCRETION OF COURT.

The general rule is that persons are not entitled to a severance of trial, as a matter of right, though the trial judge may, in the exercise of his discretion, grant a severance. Neither the fact that the defenses are antagonistic and that one defendant seeks to escape by fixing the crime upon another, nor the fact that one defendant may challenge jurors whom the other would prefer to accept, nor both, are sufficient to justify the conclusion that, in denying the severance, the trial judge has abused the discretion vested in him.

(Syllabus by the Court.)

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; Paul Lèche, Judge.

Tama Johnson and others were convicted of murder, and appeal. Affirmed.

Caleb Cushing Weber for appellant Tama Johnson. Edward Nicholls Pugh and Walter Lemann, for appellants Willie Bradford and Paul Suarez. Walter Guion, Atty. Gen., and Gustavus Adolphus Gondran, Dist. Atty. (Lewis Guion, of counsel), for appellee.

MONROE, J. Defendants having been convicted of murder without capital punishment, have appealed, and present their case (or cases) to this court by means of certain bills of exception which will be considered seriatim as follows, to wit:

1. They moved to quash the venire and the indictment upon the grounds as alleged by them (1) that the jury commissioners never selected 300 competent men to serve as jurors, and never kept or caused to be kept a general venire list of the names of such jurors; or (2) if such list ever existed, that they never kept the same complete by striking off the names of those who had served, and of those who had died, removed from the jurisdiction, become exempt, or disqualified, and, by supplementing such list by additional names; (3) that no copy of the procès verbal of the drawing was placed in the hands of the sheriff, who was therefore without authority to summon the jurors; (4) that R. J. Duke, one of the grand jurors, had, before being chosen, publicly expressed an opinion adverse to the defendants, and was incompetent to serve; (5) that the grand jury illegally left the courthouse and visited the scene of the homicide, without being authorized by the court; (6) that Act 135, p. 216, of 1898, is unconstitutional, in that it authorizes the selection of a grand jury in violation of article 117 of the Constitution; and that "to force defendants to be tried by the alleged jury drawn in this case would cause them great wrong and irreparable injury, because great wrong has been practiced and great injury committed in the selection, securing, and drawing of the alleged grand and petit juries in this case."

Upon the trial of this motion. the defend-ants offered to prove the allegations thereof by the members of the jury commission, to which offer the district attorney objected, that the witnesses so offered could not be heard to contradict and impeach the procès verbal made by them, and, the objection having been sustained, the defendants reserved a bill of exceptions to the ruling of the court. Defendants then placed on the stand, for the same purpose, Messrs. T. A. LeBlanc and Henry L. Weil, the witnesses who had been summoned to attend the meeting of the jury commissioners, agreeably to the provisions of section 4 of Act 135, p. 218, of 1898, as amended by Act 58, p. 136, of 1904, and who testified to what had taken place at said meeting, and there was also introduced in evidence (on behalf of the state) the minutes of the jury commission and the testimony of the clerk, in corroboration of the procès verbal therein contained. Beyond this it was admitted that after commencing the investigation of the case, the grand jury, without permission or direction of the court, accompanied by a deputy sheriff and the district attorney, visited the house where the killing is said to have taken place and then returned to the courthouse, and the defendants offered in evidence the procès verbal of the coroner's inquest "for the purpose of proving that one of the grand jurors, R. J. Duke, was a member of the inquest. Upon the evidence thus offered the motion to quash was overruled, and the defendants reserved their bill.

We are of opinion that the testimony of the jury commissioners, to contradict and impeach their procès verbal, was properly excluded; the rule which precludes the sheriff from contradicting his return and the juror from impeaching his verdict being equally applicable to such officers, State v. Revells, 31 La. Ann. 388; State v. Allen, 1 Ala. 442; State v. Clarkson, 3 Ala. 378—the two cases last

mentioned being cited in 17 Cyc. 574, in support of the doctrine there stated that "oral evidence is inadmissible to impugn the certificate of officers to whom the selection or drawing of juries is confided."

From the minutes of the commission it appears (without going further back) that in July, 1900, the jury commissioners selected 300 competent men to constitute the general venire, and that grand and petit jurors having been from time to time drawn therefrom, and the list having been supplemented by the addition of the names of jurors to supply the places of those who had served, died, removed, become exempt, or disqualified, the commissioners met upon October 13, 1905, and took action as follows. to wit:

"Twenty-Seventh Judicial District Court, Parish of Ascension, State of Louisiana: Be it remembered that, on this 13th day of October, 1905, we, the undersigned jury commissioners, * * * having been duly notified by the clerk of the above-mentioned court to appear at his office on this day for the purpose of drawing a grand and petit juries for the October session, * * * in the presence of T. A. LeBlanc and B. (H.) L. Weil, two competent and disinterested witnesses, * * * proceeded in accordance with law, and especially Act 135, p. 216, of 1898, amended by Act 58, p. 136, of 1904, after being by said clerk furnished with a list of the grand jurors and of those who have served as regular jurors since the previous drawing of the general venire, * * * to examine the original venire list and strike therefrom the names of such as have served as well as the names of others on the list who are known to have died, removed from the parish, become exempt, or disqualified to serve as jurors, since their names were entered thereon, and a duplicate name of O. A. Guillot, whose name appears twice on said list, were taken by us from the general venire box, and who are as follows. [Here follow the names of 12 jurors, with mention of the wards from which they were summoned.] After which, we, the jury commissioners, supplemented the original list and the ballots in the box with the names of the same number of good and competent men from the qualified jurors of the parish as were taken from the box and erased from the list, making the number of names in the general venire box and on the jury list the original standard of 300 competent, good, and true men to serve as jurors, grand and petit, for the session of the court beginning Monday, October 23, 1905, * * * and said supplemental names being as follows, to wit: [Here follow the names of 66 jurors, with specification of the wards from which they

were summoned.] And, immediately after completing the general venire list, we * * * selected therefrom the names of 20 citizens, possessing the qualifications prescribed by section 1 of said Act 135, p. 216, of 1898, amended by Act 58, p. 136, of 1904, the same being taken from different portions of this parish, as far as practicable, who shall be subject to duty as grand jurors, during the term of six months after the grand jury is impaneled and until a succeeding grand jury shall have been impaneled, the names of the persons so selected to serve as grand jurors being as follows, to wit: [Here follow the names.] And, the names of the 20 persons selected to serve as grand jurors having been written on separate slips of papers, by the clerk, in the presence of the commissioners and the witnesses, the slips containing the same were by us placed in an envelope, sealed, and the wards, 'List of Grand Jurors,' indorsed thereon, and each of the other supplemental names of the above general venire list having been written by the said clerk on a separate slip of paper, together with the number of the ward or place of residence of such person, the slips of paper or ballots, containing the names so selected, except those containing the names of those to serve as grand jurors, were placed in a box labeled 'General Venire Box.' "

And the procés verbal then proceeds to recite the drawing of the petit jurors to serve during the weeks beginning October 30th and November 6th, respectively; the placing of the names in envelopes; the sealing and indorsing of the envelopes; the placing of all the envelopes in the jury box; and the locking, sealing, and delivery to the clerk of the box, all as provided by the statute.

It appears from the face of the minute book, and from the testimony of the witnesses who were examined, that the names of the jurors who had served, died, removed, etc., were not stricken from the list by having a line drawn through them with a pen, but by having blue, yellow, and black pencil checks placed opposite them, and the defendants complain of this, on the ground that it is not a compliance with the law requiring the names to be stricken from the list. There is no merit in this complaint. The purpose of the law is to provide as nearly as practicable 300 competent men from among whom grand and petit jurors are to be drawn, which number is to be made good every six months, after striking from the list the names of

those who have served, died, removed, etc., by supplementing the list with an equal number of new names. The procès verbal of each successive drawing should show, and, in the instant case, does show, the names of the jurors then drawn for service, as also the names of those who may have died, removed, etc., since the last drawing, and whether those names, as also the names of the jurors previously drawn, are stricken from the existing list by having lines drawn through them with a pen or pencil, by being obliterated in some other way, or cut out of the paper, or by being checked in such a manner as to indicate to the commissioners that the bearers are no longer available for service as jurors is immaterial, provided enough new names are added to keep the number of competent jurors available for service up to 300 or (allowing for errors and accidents) to within a reasonable approximation of that number. Section 15 of the Act of 1898 provides:

"That it shall not be sufficient cause to challenge the general venire * * * or set aside the venire because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury as above provided; and to [no] such defect or irregularity in the selection thereof or the summoning of the jury shall be sufficient cause, if it shall not appear that some fraud has been practiced or some great wrong committed, in the selection and summoning of the jury that would work irreparable injury; provided, that it shall be good ground to challenge, for cause, any juror who is not qualified to act under the provisions of this act."

It is true that the defendants allege fraud and injury, but their counsel argue that such fraud and injury consist in the fact that the names of the jurors who had served, died, etc., were not striken from the list in a particular way (which they assume to be the way, and the only way, contemplated by the statute); i. e., by drawing lines through them, presumably with a pen or, possibly, with a pencil. The statute, however, does not confine the commissioners to that method any more than it confines them to the more

literal method of striking the names out of the paper altogether, instead of merely drawing lines through or over them. Moreover, the failure of the commissioners to strike the names off by either of the methods mentioned, or by any other method, suggests no actual fraud or such nonobservance of the statute as to justify the inference of fraud or of actual injury to the accused; since, if the list be supplemented, if the names be not stricken off, such accused has the benefit of a larger number from which may be selected the jurors by whom he is to be tried, and he is not deprived of the right to challenge, for cause, any particular juror who may be disqualified.

We find it stated in the brief "that the list of grand jurors was prepared by the clerk of court, and was never selected by the jury commissioners," but there is no evidence in support of this charge, and the contrary appears from the procès verbal of the commissioners. The allegations that no copy of the procès verbal was placed in the hands of the sheriff, and that R. J. Duke, one of the grand jurors, had, before being chosen, publicly expressed an opinion adverse to the defendants, were disproved by the evidence offered to sustain them. As to the charge that the grand jury visited the scene of the homicide without obtaining permission from the court, it appears that the place visited is within the corporate limits of Donaldsonville, the parish seat of Ascension Parish, and the judge in signing the bill in relation to the matter, says:

"Being of opinion that the defendants were not concerned with the nature of the evidence taken and considered by the grand jury, this motion to quash on this ground is overruled," etc.

The law requires a grand jury to hold its sessions at the seat of justice of the parish (Act 135, p. 221, of 1898, § 8); but it also requires it to visit the prisons within its district (Rev. St. 1870, § 2139), from which it

follows that the sessions of the body are not, necessarily, to be held at the courthouse. A grand jury is authorized to act on evidence submitted to it, but its members are also required, under a very severe penalty in case of failure so to do, to act upon facts within their own knowledge (Rev. St. 1870, § 2140), from which it also follows that they do not require the permission of the court to investigate crime, but are bound to take the initiative and determine for themselves the character of the evidence, or the sufficiency of the facts, necessary to their findings. Under these circumstances, we see no reason for holding that the action of the grand jury here complained of was unauthorized. The suggestion that the Act 135, p. 216, of 1898, is unconstitutional, has not been referred to in this court, and, we presume, is abandoned. We therefore conclude that the motion to quash was properly overruled.

2. Bradford and Suarez moved for a severance, on the ground that, as between them and Johnson, the position of each was that the other had committed the crime. This was conceded, but it was also conceded that the state was prosecuting upon the ground that all three of them had participated in the killing. Beyond this counsel for the defendants first above mentioned say in their brief:

"It is further admitted that the trial of all three accused together meant the introduction of illegal evidence against the accused, Bradford and Suarez."

We, however, find nothing to warrant this statement. If such evidence had been offered, they should (and no doubt would) have objected to it, and have protected the rights of their clients by bills of exception; but there are no such bills in the record. Moreover, it appears that no confessions were used or were intended to be used, and as Act 185, p. 355, of 1902, provides that "the circumstances of the witness being a party accused, or being jointly tried, shall in no-

wise disqualify him from testifying" (subject to the condition that he shall not be compelled to testify against himself, etc.), there appears to be no greater danger of the introduction of illegal evidence in the trial of joint defendants, having antagonistic defenses, than in any other case. The mere fact that one defendant is seeking to escape by throwing the blame upon the other is not sufficient to require a severance. Com. v. Place, 153 Pa. 314, 26 Atl. 620. Nor is it sufficient that one defendant may challenge jurors whom the others would prefer to accept, since neither has the right to select the jurors by whom he will be tried, and the exercise by one defendant or by the state of the right of challenge does not oblige the other defendants to accept jurors who are incompetent.

"The general rule," this court has said, "is that persons are not entitled to a severance of trial, as a matter of right, though the trial judge may in the exercise of his discretion grant a severance." State v. Lee et al., 46 La. Ann. 628, 15 South. 159; State ex rel. N. O. & C. R. L. & P. Co. v. St. Paul Judge, 110 La. 726, 34 South. 750.

It has been held proper to grant a severance where a confession of one defendant implicating another was intended to be used (State v. Desroche et al., 47 La. Ann. 655, 17 South. 209), but the reason of this exception to the rule, as stated, would seem to have been removed by the passage of Act 185, p. 355, of 1902. In any event the case at bar does not fall within the exception. We therefore find no error in the overruling of the motion for severance.

The questions thus presented were considered in a motion for new trial, which, for the reasons assigned, we think was properly overruled.

Since this opinion was prepared there has been presented to the court, in behalf of the defendants Bradford and Suarez, a petition,

116 LA.—28

accompanied by a typewritten statement made and verified before the judge of the district court, in the presence of all the counsel, by the defendant Tama Johnson, to the effect that she, alone, killed the person for whose homicide this prosecution was instituted, and that her codefendants are blameless in the matter, and this court is asked upon that ground to set aside the verdict and judgment appealed from, and remand the case. In support of this request, counsel for defendants refer to a case in which it was brought to the knowledge of the court in a suit pending on appeal to recover on a policy of life insurance, that the person insured was alive, and in which action was taken by this court upon the basis of that information. We find but little resemblance between that case and this, and, after mature deliberation, have concluded that in the instant case the matter presented cannot be permitted to influence the judgment to be rendered. The defendants have the right to present their case to the board of pardons, which is in a position to investigate the facts.

The verdict and sentence appealed from are accordingly affirmed.