145 So. 276

**STATE v. BUSSA.**

No. 31924.

Nov. 28, 1932.

Rehearing Denied Jan. 3, 1933.

Cook & Cook, of Shreveport, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., James U. Galloway, Dist. Atty., of Shreveport (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

ROGERS, J.

Defendant appeals from his conviction and sentence for embezzling the funds of the Vivian State Bank while he was employed as cashier of the bank.

There are twenty-one bills of exception in the record, only eleven of which are urged before this court. But as some of these bills involve the same legal proposition, we have for the convenience of the discussion arranged them into five groups.

First. Defendant, prior to his trial, moved for the recusation of the district attorney, alleging he was a creditor and depositor of the bank whose funds defendant was charged with embezzling, and that he was also related within the fourth degree to certain other creditors and depositors of the bank. The district attorney demurred to the motion, and his demurrer was sustained by the trial judge, who overruled the motion to recuse. This ruling of the trial judge is presented for review under defendant's bill of exception No. 1.

The grounds for recusing district attorneys are set forth in article 310 of the Code

of Criminal Procedure, the first paragraph of which reads as follows, viz.:

"If said district attorney be related to the party accused or to the party injured within the fourth degree, or be his father-in-law, or his son-in-law, or his brother-in-law, or be the husband of the accused or of the party injured."

The codal article so far as it applies to the question submitted for decision is merely a re-enactment of Act No. 35 of 1877, in construing which this court has held that the grounds of recusation therein prescribed for district attorneys are exclusive. See State v. Boasberg, 124 La. 289, 50 So. 162.

The depositors are mere creditors of the bank, and the codal article does not, either by name or reference, embrace creditors among the injured parties. It was the bank —the corporation—and not its creditors, that was injured by defendant's embezzlement of the bank's funds.

We find no ground for disqualifying the district attorney because he is a depositor in the bank or is related within the fourth degree to other depositors.

■ Second. Defendant complains under bill of exception No. 2 of the action of the trial judge in overruling his motion to quash the venire.

The motion to quash alleges, substantially, that the original venire list had not been purged within six months prior to the drawing of the venire before which defendant was tried; that before the jury commission assembled, the clerk of court prepared a list of names of his own selection of a few more than the number required to replace the jurors who have served, from which list the jury commission selected the names required to supplement the names taken from the general venire box; that the jury commission did not well mix the slips containing the names of the jurors in the venire box; that the names of the veniremen were not drawn one at a time, but that several of the commissioners drew their names from the box, not one at a time, but several at a time; that one of the witnesses to the drawing was not present during the entire time; and that at the time the venire was drawn before which defendant was tried there were only 240 names in the general venire box.

Evidence was adduced on the motion to quash. This evidence shows that at the drawing on April 29, 1931, sixty names were drawn from the venire box. The procès verbal of the jury commission recites that at its meeting of June 8, 1931, it returned only thirty names to the box. But the evidence also shows that the deputy clerk who drew up the procès verbal made a typographical error by inserting therein thirty names instead of sixty names, the latter being the number of names actually placed in the box. Sixty names were drawn out of the venire box on December 7, 1931, and at the next meeting of the jury commissioners on February 3, 1932, these names were replaced by sixty other names, as shown by the procès verbal, although the jury book, from which defendant's counsel obtained their information, showed only thirty names; the procès verbal to that extent being incorrectly copied in the record.

Defendant's trial opened on May 2, 1932, so that it is clear at the time the venire

before which he was tried was drawn on April 7, 1932, the general venire box contained its complement of 300 names.

The testimony shows that at the time the venire was drawn, the clerk of court furnished the jury commission with a list of names from which the commissioners selected thirty names to replace a like number of names previously withdrawn from the venire box. The box was then well shaken to mix the 300 names therein; after which thirty names were withdrawn from the box in groups of one, two, three, and four and laid upon the table in two rows containing fifteen names each. The names so drawn were then examined, and among them were found the names of three persons who the clerk of court informed the commissioners he knew were incompetent to acts as jurors—two because of their physical infirmities, and the other because of his removal from the parish. These three names were then removed from the number of veniremen drawn, returned to the venire box, and replaced by three other names drawn from the box.

■ The testimony shows that two competent witnesses were present at the time the venire was drawn, and we think fairly shows their presence during the entire time the jury commissioners were in session; at least, there is no positive testimony to the contrary. And the legal presumption is that the proceedings were regular and that the venire was regularly drawn.

■ Article 203 of the Code of Criminal Procedure provides:

"It shall not be sufficient cause to challenge the venire selected for any session of the court or portion thereof or for service at any time in any parish or district of this State, or to set aside the venire, because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury, or in the composition, summoning or proceedings of the Jury Commission, unless some fraud has been practiced or some great wrong committed that would work irreparable injury; provided, that it shall be good ground to challenge for cause, any juror who is not qualified by law to act."

This court, in State v. Johnson, 116 La. 856, 41 So. 117, held that the fraud required by section 15 of Act No. 135 of 1898 to be shown as cause for quashing of the venire of jurors is actual fraud or such nonobservance of the statute as will justify the inference of actual injury to the accused. The statutory provision thus construed and article 203 of the Code of Criminal Procedure are identical in terms. See, to the same effect, State v. Taylor, 44 La. Ann. 783, 11 So. 132, in which the provisions of Act No. 44 of 1877 were construed and State v. Smothers, 168 La. 1099, 123 So. 781, approving State v. Taylor, in which article 203 of the Code of Criminal Procedure was construed.

Although the evidence, which we have hereinabove summarized, may show some irregularities in the proceedings of the jury commission or in the drawing of the jury, it does not show any fraud was practiced or that any wrong was committed as would justify the inference of actual injury to the accused.

We do not find that the trial judge erred in overruling the motion to quash.

Third. Defendant's prosecution for embezzlement is based on section 907 of the Revised Statutes, which reads as follows:

"Any president, cashier, teller or clerk, or other officer or person employed in the service of any bank chartered by this State, or which may be hereafter chartered by this State, who shall knowingly and willfully embezzle or convert to his own use, or shall knowingly aid and abet any person in embezzling or converting to his own use, any money belonging to such bank, or deposited therein, shall, on conviction, be imprisoned at hard labor, not more than seven, nor less than one year."

Defendant contends that the offense of embezzlement denounced by the statute is of money and money alone, which, as revealed by the facts, the state failed to prove in this case.

The facts developed on the trial of the defendant, as we understand them, are as follows, viz.:

The Exchange National Bank, of the City of Shreveport, had on deposit certain funds belonging to the Vivian State Bank, of the town of Vivian, and it also held defendant's note for $2,000. On the maturity of the note, the Exchange National Bank drew a draft on defendant for the amount of the note, attaching the note to the draft. The draft, with the note attached, was forwarded to the Vivian State Bank, where, upon presentation, it was paid. The payment was made by means of a check or draft drawn by the Vivian State Bank against the funds held for its account by the Exchange National Bank. When the check or draft was received by the Exchange National Bank, it was entered and charged to the account of the Vivian State Bank.

Defendant was the cashier of the Vivian State Bank. On, or about, the maturity of his note which was held by the Exchange National Bank, defendant, himself, or his subordinates by his direction, made certain entries in the books of the Vivian State Bank, purporting to show a discount or purchase by the bank of defendant's note for $2,000. Apparently no such transaction ever took place. No note was executed, or, if it were, the instrument, without being paid, was wrongfully abstracted by defendant, or by one of his subordinates acting under his authority, from the files of the bank. In any event, defendant was credited with $2,000 on the books of the Vivian State Bank, although he was not rightfully entitled thereto, not having made such deposit. This false account was drawn upon or checked against by defendant or by one of his subordinates under his direction in paying defendant's note that was held and presented by the Exchange National Bank. And as a result of defendant's manipulations, the funds of the Vivian State Bank were wrongfully applied to extinguish defendant's indebtedness to the Exchange National Bank.

Defendant's contention is presented for review in seven bills of exception, viz.: Nos. 4, 8, 9, 10, 11, 12, and 15. All these bills were reserved to rulings of the trial judge refusing to give certain requested special charges and overruling objections to certain portions of his charge to the jury.

The gist of the requested charges is contained in paragraph 4, wherein defendant submits as the true definition of money as referred to in the statute the following:

"The term means money in the sense of legal tender and you are instructed that legal tender is gold coin, United States Treasury Notes, silver coin, and the minor coins of the United States, for minor amounts only and current convertable bank paper, unless the latter is objected to upon the ground that it is not gold or silver."

The trial judge, contrary to defendant's contention, and over defendant's objections, charged, substantially, that a banker, or bank employee, may embezzle money of a bank by means of drawing checks against the bank's funds and fraudulently paying them out of such funds through a system of false entries in the bank's books.

In his charge, the trial judge defined the term "money" generally and as used in indictments or informations in these words, viz.:

"Money is defined to be that which passes freely, from and to, and throughout the community in final discharge of debts and for payment of commodities, being accepted equally without reference to the character or credit of the person who offers it and without intention of the person who receives it to consume it or apply it to any other use than in turn to tender it to another in discharge of debts or payment for commodities.

"The word money as used in indictments or informations is a broad generic term. It means any currency usually and lawfully employed in buying and selling. Lawful money of the United States is money of any kind in circulation by sanction of the laws of the United States. It means money as commonly understood and not any particular species or issue of money."

Then followed the charge as to the elements necessary to constitute the wrongful conversion of the bank's money and the commission of the crime of embezzlement.

Defendant argues that there was a fatal variance between the allegations of the information and the proof adduced on the trial of the case, for the reason that his note which was held by the Exchange National Bank was not extinguished by the payment of money but by means merely of certain book entries.

In support of his argument that section 907 of the Revised Statutes applies only to the embezzlement of money in its restricted sense of coins or currency usable as legal tender, defendant refers to article 232 of the Code of Criminal Procedure, Act No. 165 of 1918, and the case of State v. Eicher, 174 La. 344, 140 So. 498.

The codal article, which is similar to section 1061 of the Revised Statutes, merely provides that whenever it shall be necessary in an indictment to make an allegation as to any money or bank note, it shall be sufficient to describe such money or bank note as money without specifying any particular coin or bank note. But there is nothing in the article which limits a prosecution for the embezzlement of money only to coins or bank notes.

The legislative act is the general embezzlement statute, covering the wrongful conversion of money or other property.

State v. Eicher was a case in which this court held that the renewal of a loan was neither money nor property and not violative of the statute relative to false pretenses; money in such a statute meaning the medium of exchange recognized by the law of the country, and property in such a statute meaning worldly goods or possessions, tangible things, and things which have exchangeable or commercial value.

█ But defendant's prosecution is based on a special statute denouncing the embezzlement or conversion of money belonging to or deposited in a bank by the bank's officers or employees.

The purpose of the statute is to reach the officials, or others in the service of the bank, whether or not they are the custodian of the funds. Whether the funds embezzled are paid to an official of the bank by a debtor, or taken by an official, or in his hands to be used for the bank, or by whatever mode such funds are in his possession, it is the design of the statute to cover the offense of embezzling such funds by an official, or others in the service of the bank. State v. Nicholls, 50 La. Ann. 699, 23 So. 980.

█ The charge here is embezzlement of funds of a bank under a special statute covering the offense, and the greatest latitude must be allowed in the definition of the money or funds alleged to be embezzled. This is so, because persons dealing with a bank exercise no supervision over its officers or employees, and cannot, as in the case of their individual transactions, protect the custody of the bank's funds.

█ To assume that the Legislature, when it enacted a statute specifically covering the embezzlement of a bank's money by its officers or employees, intended to limit the proof of the money embezzled to its specific, and not to extend it to its generic sense, is to assume that the Legislature intended to enact a law impossible of enforcement. We are, of course, not authorized to indulge in any such assumption.

█ It appears to be conceded by defendant that if the check drawn by the Vivian State Bank had actually been paid in cash by the Exchange National Bank, and the cash so drawn had been used by defendant in paying his note held by the latter, proof thereof would be sufficient to sustain the charge of embezzlement of money. As we see it, the legal effect of the transaction as it actually occurred is not materially different.

The practical result of the transaction was that when the check of the Vivian State Bank was given to the Exchange National Bank in payment of defendant's note and was paid by the Exchange National Bank charging the amount of the check to the account of the Vivian State Bank, the latter bank had its account decreased to the amount of the check, and it was just as much a disposition of the $2,000 by defendant as if defendant had drawn the check to himself and had gone to the Exchange National Bank, got the money, and paid it to the Exchange National Bank in discharge of his note.

When a check is drawn there is a segregation of that much money from the general funds of the bank which becomes the property of the depositor. The money may be placed to the credit of the payee, or it may be handed to him over the counter, or oth-

erwise disposed of as the parties may elect. But for a space of time, however short, the money of the depositor is being dealt with.

And hence it has been held under statutes against embezzlement of money that such embezzlement is accomplished by the drawing of a check upon a bank where such money is deposited. See Territory v. Hale, 13 N. M. 181, 81 P. 583, 13 Ann. Cas. 551, and authorities therein cited; State v. Johnson, 109 Kan. 239, 199 P. 104; Fulkerson v. State, 17 Okl. Cr. 103, 189 P. 1092, 1097.

 To constitute embezzlement under the statute, it was not necessary that defendant himself should have obtained the physical or manual possession of the money. By issuing, or causing to be issued, the check of the Vivian State Bank, he authorized and directed the Exchange National Bank to pay to itself the money called for therein, which in contemplation of law it did, although there was no actual handling of any money during the entire transaction. In the language of Morse, Banks, § 451: "A credit given for the amount of a check by the bank upon which it was drawn is equivalent to and will be treated as a payment of the check. It is the same as if the money had been paid over the counter on the check and then immediately paid back again to the account or for the use for which the credit was given." See, to the same effect, Bartley v. State, 53 Neb. 310, 73 N. W. 744.

Defendant cites State v. Rarey, 72 Mont. 270, 233 P. 615, where the vice president of a bank drew a foreign draft and credited the proceeds to his account. The draft was dishonored and on its return was charged to the account of one of the bank's depositors. The court held that even if the officer took from the depositor's account a credit which he converted to his own, it did not constitute larceny from the bank under the Revised Code of Montana. And Brown v. State (Ala. App.) 141 So. 725, where the court held that an officer of a building and loan association, who sold a certificate of stock of the association for which he received a check for $1,000, could not be convicted of the embezzlement of money; defendant having received a check and not money. Plainly these cases are not applicable to the case presently before us.

Defendant also relies on several cases in other jurisdictions, holding that an embezzlement of money cannot be sustained on proof of the embezzlement of checks.

But defendant does not contend that his offense, if any, was the embezzlement of a check. His claim is that the extinguishment of his note held by the Exchange National Bank was accomplished by means of an exchange of credits and not by the payment of money. And defendant's claim, as we have hereinabove shown, is not well founded.

 Fourth. This complaint appears under bill of exception No. 16. Defendant's attorney, during the course of his argument, undertook to read to the jury a portion of the charge given by one of the other judges of the Caddo district court in a case previously tried against the present defendant based on the same section of the Revised Statutes. Defendant was acquitted. The state's objection was that the charge given in the other case was not the law. That defendant's counsel had no right to read it to the jury, because it was nothing more

than the expression of opinion by the judge from whom it emanated; and that the law in the present case must emanate from the judge before whom it was being tried.

We find no error in the ruling complained of. A charge of a trial judge is not a judicial decision. And the reading of an isolated portion of the charge of the trial judge in another case would only have served to mislead and confuse the jury in this case.

■■■ Fifth. This complaint arises under bill of exception No. 21, reserved to the action of the trial judge in overruling a motion in arrest of judgment.

The motion to arrest, in substance, is predicated on the alleged unconstitutionality of articles 8 and 9 of the Code of Criminal Procedure, on the ground that they deal with substantive law and not with procedural law; and on the ground, also, the articles purport to amend section 986 of the Revised Statutes, as amended by Act No. 73 of 1898, so as to make an act an offense which was not an offense under the prior statutes.

The information in this case was filed on November 6, 1931, and the date of defendant's alleged offense is fixed in the information as of September 18, 1928. But the information further alleges that the offense charged was not made known to any judge, district attorney, or grand jury having jurisdiction thereof until the 13th day of June, 1931.

The prescription of one year in criminal prosecutions is established by section 986 of the Revised Statutes as amended by Act No. 73 of 1898. The period thus fixed is not changed by the Code of Criminal Procedure.

Section 986, as amended by Act No. 73 of 1898, further provides:

"* * * unless the indictment or presentment for the same be found or exhibited within one year next after the offense shall have been made known to a public officer, having the power to direct a public prosecution."

The courts have held that this includes deputy sheriffs, justices of the peace, etc.

Article 8 of the Code of Criminal Procedure provides:

"* * * after the offense shall have been made known to the judge, district attorney or Grand Jury having jurisdiction."

The repealing clause of the act adopting the Code reads:

"All laws or parts of laws contrary to or in conflict with the provisions of this Code are hereby repealed." Act No. 2 of 1928, § 2.

Therefore, the only change made in the Code as to prescription is in regard to what allegations the bill must contain to negative prescription.

Before the adoption of the Code of Criminal Procedure the required allegation was that the offense charged was not known to a public officer having the power to direct a public prosecution, and since its adoption the necessary allegation is that the offense charged was not known "to the judge, district attorney or Grand Jury having jurisdiction."

In State v. Rodosta, 173 La. 623, 138 So. 124, 127, this court said: "There is a vast difference between substantive law and

procedural law. As relates to crimes, substantive law is that which declares what acts are crimes and prescribes the punishment for committing them. Procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished. 'Criminal Procedure' refers to pleading, evidence, and practice."

The change in the law, to which defendant refers, is clearly a change in the pleading, that is, in the procedure, required in criminal prosecutions. If this were not so, the mere allegation negativing prescription could not as provided in article 9 of the Code of Criminal Procedure shift the burden of proving the accrual of prescription on the person alleging it.

The prescription provided in the codal articles merely limits the right of action of the state in the prosecution of certain criminal offenses. The guilt or innocence of the defendant is in no way involved under an allegation negativing prescription, the allegation alone being sufficient to interrupt prescription in the absence of proof to the contrary by defendant.

A criminal offender is as guilty after the prescriptive period has accrued as he was at the time he committed the offense. The only difference is that after the period of prescription he cannot be prosecuted, unless the allegations prescribed for negativing prescription are contained in the indictment or bill, which allegations in no wise affect the act or deed constituting his offense.

The trial judge, in commenting upon certain decisions relied on by defendant as holding that the statute of prescription or limitation was broad and sweeping enough

to enter into the element of the offense itself, correctly said: "There is no occasion to become confused over decisions to the effect that where peremption appears on the face of the papers, without an allegation of interruption, no valid offense is charged. These decisions do not mean that the acts complained of have not been committed. They simply mean that because of the lapse of time accused cannot be prosecuted. The prosecution is a matter of procedure as distinguished from the acts upon which the prosecution is based."

Defendant has filed an assignment of errors in this court, in which he presents the same questions we have disposed of in our rulings upon his various bills of exception.

For the reasons assigned, the verdict and sentence appealed from are affirmed.