ODOM; ’Justice.
 

 S. J. Stell, H. W. Stell, and Tony Baronne were indicted by a grand jury, which indictment charged that they had committed certain misdemeanors denounced by Act No. 43 of 1942, known as the new Criminal Code.
 

 Prior to arraignment they filed a motion to quash the indictment and challenged the grand jury array, on the grounds that the selection of the grand jury list and the drawing of the panel were illegal, null, and void, and that the grand jury was incompetent to return a true bill against them. This motion to quash was overruled, and a bill of exception was reserved. Defendants were tried and convicted.
 

 Before sentence was imposed, defendants filed a motion in arrest of judgment, setting up in the motion substantially the same grounds for the arrest of judgment as were set forth in the motion to quash. The motion in arrest of judgment was also overruled by the court, and each of the defendants was sentenced to pay a fine of $305 and costs, and, in default of the payment of the fine and costs, was ordered to serve three months in jail. From the conviction and sentence they appealed.
 

 The testimony adduced at the hearing on the motion to quash the indictment shows that on March 3, 1944, the jury commission met and selected 20 names to compose the grand jury list for the spring term of court. It is admitted by both
 
 *773
 
 sides that these proceedings of the jury-commission were regular in all respects.
 

 The date set for the empaneling of a grand jury for the spring term of court' was March 13, 1944. At 10 o’clock on the morning of that date, the judge appointed a foreman, who was duly sworn. The sheriff then drew 11 names from the envelope containing the grand jury list as selected by the jury commission, and, before the 11 were sworn, the trial judge requested the sheriff to hand him the envelope from which the 11 names had been drawn. On examination of the envelope, the judge discovered that six of the slips of paper, on each of which a name was written, had been glued to the inside of the bottom of the envelope containing the 20 names. He detached two of the slips, which were brought up as exhibits, and each of these two slips shows traces of glue on one side of it near the end. Four of the slips of - paper are. still glued to the envelope, which, with its contents, was brought up as an exhibit.
 

 The envelope containing the 20 slips of paper is nine inches long and four inches wide, and the slips of paper on which the names were written are approximately four inches long and one inch wide. In order to draw the slips of paper from the envelope, the sheriff tore off one end of it. On the other end of the envelope and on the outside there appears the letter “S”. When the judge made these discoveries, he refused to permit the 11 whose names had been drawn to be sworn as jurors, because, as stated by him, he had discovered that an irregularity and gross fraud had been committed against the court, and he immediately ordered'the jury commission to convene at 1:30 in the afternoon of the same day “for the purpose of placing the names of the 20 Jurors [sic] selected to serve as Grand Jurors for the week beginning March 13, 1944, in an envelope properly sealed and signed to replace the names drawn from the envelope this day opened in Open Court, wherein it was discovered that some of the names of Grand Jurors had been stuck together and sealed to the bottom of the envelope, thereby prohibiting the names of the Grand Jurors whose slips were stuck together from being drawn in its [their] regular order”.
 

 The members of the jury commission convened at 1:30, and what they did, is disclosed by their proces verbal, .which recited that the members of the jury commission, including the clerk of court, convened in the presence of two witnesses, and “That in accordance with the said Order of Court we immediately proceeded to select the same twenty names as had been selected at the meeting of this Jury 'Commission on. March 3, 1944, and that the same twenty names selected as grand jurors were typed on twenty separate slips of paper and placed in the Grand Jury envelope, sealed and signed by the members of this Jury Commission. That after said envelope was signed and sealed, same was placed in a box labeled ‘grand jury box’ and sealed across. the key hole by a slip of paper, signed by all members.”
 

 
 *775
 
 On the same day, a grand jury was regularly empaneled, the names having been drawn from the envelope in which they were placed by the jury commission when it convened on that day. It was this grand jury which indicted the defendants. Three of the names taken from the envelope at the first drawing were not included in the second drawing.
 

 The ' errors of which defendants complain are stated in their counsel’s brief and are substantially these: That the judge erred in issuing a “special order” on March 13, 1944, “convening the Jury Commission and ordering said Jury Commission to meet instanter for the purpose of selecting twenty (20) names to serve as Grand Jurors [sic], when the same twenty (20) names had been previously selected by the same Jury Commission on March '3, 1944”.
 

 Counsel’s complaint- seems to involve two errors, the first being that the court erred in ordering the jury commission to meet instanter -and the second being that the court erred in ordering the jury commission to select the same 20 names as had been previously selected by it on March 3, 1944.
 

 We find no merit in these contentions. As to the court’s order convening the jury commission instanter, the testimony shows that the first drawing of the names from the envelope took place between 10 and 11 a. m., and that the judge’s order directing the jury commission to reconvene was delivered orally from the bench. His written order was filed at 11 o’clock. At 11:15 the sheriff began to serve the notices on the members of the jury commission. Each of the members of the commission received notice in time to reach the courthouse by 1:30, and each did appear and participate in the proceedings except Sam Guillot. Mr. Guillot lived at Bunkie, 18 miles from the parish seat. When the sheriff attempted to serve notice on Mr. Guillot, he was informed that the commissioner was then out of the parish but would return between 12 and 12:30. As a matter of fact, Mr. Guillot was at that time out of the parish, and the sheriff left the notice at his office. Mr. Guillot returned to his office about 1 o’clock and there received the notice. For some reason unexplained, he did not reach the courthouse in time to participate in the proceedings of the jury commission, although it appears from the testimony that he could have done so if he had left Bunkie for Marksville, the parish seat, immediately after receiving his notice.
 

 Article 176 of the Code of Criminal Procedure provides that three members of the jury commission, together with the clerk of the district court, “shall be a sufficient number to perform the duties of the Jury Commission, provided that all members shall have been notified by the clerk of the District Court of the time and place designated by him for the meeting of the Commission.” .Counsel for defendants invokes the rule laid down in this article of the Code and says in his brief that “Sam Guillot, a member, having been absent and not participating in the meeting could not have humanly gotten notice -and attended this meeting within the short time
 
 *777
 
 allowed in said notice or Order”. He cites the case of State v. White, 153 La. 300, 95 So.
 
 776,
 
 where it was held that “notice must be served on all commissioners, as a condition precedent to the right of a lesser number to act” (citing State v. Kellogg, 104 La. 580, 584, 29 So. 285, and State v. McClendon, 118 La. 792, 43 So. 417).
 

 In State v. White, the testimony showed that the only effort to serve one of the jury commissioners was that the notice to him was made out by the clerk and given to the sheriff. The sheriff testified that he made no diligent effort to serve the notice, but only telephoned to the jury commissioner’s home, and, when he was told that the commissioner was not at home, he made no further effort and was not asked to do so. The testimony showed that the commissioner had been at times absent from the parish, but it was not shown that the commissioner’s whereabouts was not known or that he could not have been reached by mail or otherwise.
 

 In the McClendon case, one of the jury commissioners did not take the proper oath of office, and it was held that he was not legally qualified to enter upon the discharge of the duties incumbent upon him as a jury commissioner, and hence that the jury commission, which the law requires shall be constituted of five members with the clerk or his chief deputy, was not established and, not having come into existence, could not legally have performed any of the functions assigned to it (citing State v. Kellogg, supra).
 

 In the case at bar, no such conditions existed. A notice ordering Mr. Guillot, one of the commissioners, to appear was issued by the clerk, and the sheriff made diligent effort to serve it. The sheriff could not serve the notice personally for the reason that the commissioner was absent from the Parish of Avoyelles. The sheriff left the notice at Mr. Guillot’s office, and the notice was received in ample time to enable the commissioner to reach the parish seat in time. One of the other jury commissioners lived at Bunkie, where Mr. Guillot lived, received his notice, and reached Marksville in time to participate in the proceedings of the commission.
 

 In State v. White, supra, this court said: “In State v. Bouvy, 124 La. 1054, 50 So. 849, it was held that it was sufficient to make reasonable effort to notify a commissioner who could not be found. In State v. Sturgeon, 127 La. 459, 53 So. 703, it was held sufficient to mail the notice to the commissioner’s proper address, even though he did not receive it. In State v. Woodward, 136 La. 291, 67 So. 7, every reasonable effort had been made to serve the jury commissioner in time.”
 

 In each of the cited cases, the court held that the jury commission was properly constituted even though one of the members did not receive notice and was absent. In the White case the court found that no effort whatever was made to serve the notice. In the Bouvy case the notice was not served because the commissioner was absent from the parish. In the Woodward case the notice was sent by mail
 
 *779
 
 and was received by the commissioner’s wife at 1:15 p. m. but was not delivered until 5 p. m. because the commissioner was absent in the field. He stated that, if he had received the notice at 1:15, he could have arrived at the courthouse in time for the meeting. The court held that the defendant suffered no prejudice by the absence of the commissioner and therefore his objections to the venire were without merit.
 

 In the case at bar, as we have said, a diligent effort was made to serve notice on Commissioner Guillot, and service was made in the only way it could have been made, because he was absent from' the parish when the sheriff reached his office in Bunkie.
 

 The written order of the judge directing the jury commission to convene was signed and filed at 11 a. m. It directed the commission to meet at 1:30 p. m. Counsel for defendant .argues that it is unreasonable to assume that the jury commission' could have been notified in. time to convene within the short space of two and a half hours allowed by the judge. The answer to this objection is that the notices were issued and served in ample time for the commissioners to convene at 1:30, and that each of the commissioners except Mr. Guillot was present at 1:30, and the testimony shows that Mr, Guillot’s notice was received by him at his office at 1, which gave him ample time to reach the courthouse as did the other members, and that the only reason why Mr. Guillot did not receive the notice in person was that he was absent from The' parish. The judge knew, of course, where each of the members of the commission resided, knew the facilities for notifying them, and knew that, with the present-day facilities for transportation, the notices could be served and the commissioners could reach the courthouse within the time allowed. The testimony shows that he made no mistake. We think the order was reasonable.
 

 The second complaint is that the judge erred in ordering the jury commission to put the 20 names selected on March 3, 1944, in another envelope so that a grand jury could be redrawn from the same 20 names. Counsel for defendant argues that the judge usurped the functions of the jury commission by ordering the jury commission to place in a'new envelope, from which the grand jury would be drawn, the same names as were placed in the original envelope; that it was the function of the jury commission and not of the judge to say what names should be placed in the new envelope.
 

 There is no merit in this contention. On March 3 the jury commission selected from the general venire list the names of 20 citizens possessing the qualifications of grand jurors, who should be subject to duty as grand jurors during the term of six months after the grand jury was empaneled. The names of the citizens selected were written on separate pieces of paper and placed in an envelope, as the law requires. At the time appointed for the empaneling of the grand jury, it was discovered that someone had attempted to perpetrate a fraud upon the court by opening the envelope and gluing six of the
 
 *781
 
 slips to the envelope. Since the name of the foreman appointed by the judge was eliminated, there remained loose in the envelope only 13 slips from which 11 were drawn, so that, instead of drawing the remaining 11'names by lot from a list of 19 names, they were drawn from a list of only 13. This did not conform to the provisions of the statute. What the judge did, and all he did, was to .order the jury commission to reassemble and rewrite the names of the 20 citizens, selected on March 3, on new slips of paper and deposit the slips in another envelope, from which a grand jury could be drawn according to law. The selection of the 20 names had already been regularly made, and for that reason it was not necessary for the jury commission to make another selection and another list. The only irregularity was in the first drawing of the names.
 

 Counsel for defendant concedes that the selection of these names on March 3, 1944, was regular and in compliance with the law in every respect. He does not argue that the citizens whose names appeared on the list were not qualified to serve as grand jurors. There was no fraud practiced in the selecting or summoning of the grand jury.
 

 Article 203 of the Code of Criminal Procedure provides that it shall not be sufficient cause to challenge the venire selected for any session of the court because of a defect or irregularity in the manner of selecting the jury or in its composition, “unless some fraud has been practiced or some great wrong committed that would work irreparable injury.” State v. Phillips, 164 La. 597, 114 So. 171; State v. Courtney, 170 La. 314, 127 So. 735; State v. Bagwell, 154 La. 980, 98 So. 549; State v. Jenkins, 160 La. 757, 107 So. 564.
 

 In State v. Bussa, 176 La. 87, 145 So. 276, 278, we said: “This court, in State v. Johnson, 116 La. 856, 41 So. 117, held that the fraud required by section 15 of Act No. 135 of 1898 to be shown as cause for quashing of the venire of jurors is actual fraud or such nonobservance of the statute as will justify the inference of actual injury to the accused. The statutory provision thus construed and article 203 of the Code of Criminal Procedure are identical in terms. See, to the same effect, State v. Taylor, 44 La.Ann. 783, 11 So. 132.” See also State v. Smothers, 168 La. 1099, 123 So. 781.
 

 In State v. Kellogg, 104 La. 580, 29 So. 285, 286, the defendant was indicted for murder and convicted of manslaughter. In that case, as in the case at bar, counsel for defendant filed a motion to quash the indictment, which motion was overruled, and a bill was reserved. The facts in that case were that the judge had named five citizens who, with the clerk of court, were to constitute the jury commission, and had ordered the commission to meet and select the names for the venire and prepare the lists from which the grand and petit jurors were to be selected. Two of the persons named to compose the commission failed-to qualify. However, the other three, together with the clerk (these constituting a quorum),, held a meeting and drew the veniré and prepared the lists. The trial judge, after being informed of what had
 
 *783
 
 been done, issued an order annulling and setting aside the proceedings of the jury commission and directed that it meet again with the required five members besides the clerk and prepare new lists. This was done, and the grand jury by which the defendant was indicted was chosen from the second grand jury so selected. Defendant’s complaint was that the judge erred in setting aside the venire originally selected and in ordering a new selection and new lists. In deciding the issue raised by the defendant, this court said: “By virtue of the general provisions of law, every court has the power that is necessary to the exercise of the jurisdiction conferred upon it (Code Prac., art. 877); and, in the matter of selection of jurors and of their service in the district courts in this state the statute governing the subject is made to depend for its efficient enforcement very largely upon the presiding judges, and much is, necessarily, left to the discretion of those officers. Hence it is clearly within the authority, and is, moreover, the plain duty of a district judge to see that all the proceedings in his court, and particularly those which underlie trials by jury, involving human life, are regular and orderly. If, therefore, in the instant case, there was any irregularity in the proceedings which the judge a quo had ordered, agreeably to the provisions of the law, for the obtention of jurors, and upon which, directly or remotely, were to be based all the findings of the grand juries and all the trials before the petit juries thereafter to be presented and conducted in his court, it was his right and his duty to correct it; and it was for him to determine, as there was no one else authorized to act in the premises, whether an irregularity existed, and, if so, whether it was serious or trifling, and what remedy should be applied, since the law fails to particularize in that respect.”
 

 In the case át bar, the judge discovered that a fraud had been practiced against his court by someone other than the jury commission. The drawing of the names for the grand jury from the first envelope was irregular, and in order to cure the irregularity the judge ordered that the names on the list of citizens from which the grand jury was to be drawn be rewritten on new slips of paper and deposited in another envelope, and that the names of the grand jurors be drawn from the new envelope. In entering such an order, the judge did not abuse his discretion. In fact, as was said in the Kellogg case, it was his duty to take the action which he did.
 

 In support of his contention, counsel for defendants relies mainly upon the ruling made in the case of State v. McGarrity, 140 La. 436, 73 So. 259. In that case, at the opening of the term of court a foreman of the grand jury was appointed by the judge, and the names of 11 persons were drawn from the envelope by the clerk of court. The foreman and the 11 were duly sworn to compose the grand jury. The grand jury retired, and a few minutes later the district attorney, noticing that the names of the 11 had been drawn from the envelope by the clerk instead of by the sheriff, as the law requires, called the judge’s attention to the irregularity and
 
 *785
 
 asked the
 
 judge
 
 to set aside the drawing and order another. This the judge did. The sheriff then drew from the envelope the name of T. W. Evans. When this first name was drawn by the sheriff, the judge had not appointed a foreman. He then reappointed the same foreman, McGee, who took his seat. The sheriff asked the judge what he should do with the slip which he had drawn on which was written the name of Evans. The judge told him to put it back into the envelope and proceed with the drawing. The sheriff proceeded to draw 11 names from the envelope to complete the grand jury panel. The name of Evans was not drawn. The defendant filed a motion to quash the indictment on the ground that the empaneling of the grand jury was irregular. The motion to quash was sustained by the trial judge, and the State appealed.
 

 It seems to have been conceded in that case that the court was vested with authority to set aside the first drawing because of the irregularity in the drawing of the names by the clerk instead of by the sheriff. But this court held that, the sheriff having drawn the name of Evans from the envelope, Evans irrevocably became a member of the grand jury, and that the court had no right to order the sheriff to put his name back into the envelope. The court in passing said that this irregularity would have been cured if Evans’ name had been again drawn from the envelope by the sheriff. The court held that the original appointment of McGee as foreman of the grand_ jury was regular and proper, and that there was no necessity for the judge’s reappointing him at the second drawing, and that the drawing of the name of Evans by the sheriff was also regular, since the original appointment of the foreman remained in force, and that therefore Evans became irrevocably a member of the grand jury, and that the judge had no right to order his name put back into the envelope. This court sustained the ruling of the trial judge in quashing the indictment on the ground that the drawing of the grand jury was irregular.
 

 Instead of the McGarrity case’s supporting defendants’ contention in the case at bar, that case is against him, because it seems to have been conceded that, since the first drawing was irregular, the judge had the right to set that drawing aside. Now, in the case at bar, the first drawing of a grand jury was irregular on account of a fraud which had been practiced upon the court, and the judge set that drawing aside and ordered the names selected by the jury commission put back into a new envelope so that another drawing of a grand jury could be had in the manner and form prescribed by law.
 

 Since we find no error in the drawing of the grand jury, the judgment of the trial court overruling the motion to quash the indictment and the judgment overruling the motion in arrest of judgment are affirmed. Since these are the only complaints made by the defendants on appeal, it follows that the conviction and sentence of the defendants must stand.